RECEIPT # 57082
AMOUNT $ 150
SUMMONS ISSUED Y-1
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK. M
DATE 7-8-04

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

EUGENE AND DAYMEL SHKLAR
FOUNDATION,

      Plaintiff,

v.                    C.A. No. _____

IAN SIMMONS,

      Defendant.

**04    11529    JLT**

MAGISTRATE JUDGE _Collings_

## COMPLAINT

### INTRODUCTION

1.     This is an action by plaintiff, Eugene and Daymel Shklar Foundation (the "Foundation"), against defendant, Ian Simmons ("Simmons"), arising out of an agreement to purchase real estate (the "Agreement") executed by the parties and a promissory note (the "Note") executed by Simmons. The claims by the Foundation against Simmons are for breach of contract, fraud, and violation of M.G.L. c. 93A, §§ 2 & 11, based on Simmons' failure to fulfill his obligations under the Agreement and Note.

### THE PARTIES

2.     Plaintiff Eugene and Daymel Shklar Foundation is a charitable organization, incorporated under California law, with its principal place of business at 70 Geoffrey Drive, Santa Cruz, California 95062. The Foundation supports and promotes Ukrainian studies and culture, as well as educational, cultural, and health-care programs throughout the world.

3.     Defendant Ian Simmons is a resident of 4 Hilliard Place, Cambridge, Massachusetts 02138.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000 and there is diversity of citizenship between the parties.

5.  Venue is appropriate under 28 U.S.C. § 1391(a)(1), because the defendant resides in the judicial district of Massachusetts, and under 28 U.S.C. § 1391(a)(2), because a substantial part of the acts giving rise to the claims herein asserted occurred in Massachusetts.

## FACTUAL BACKGROUND

6.  The Foundation is the owner of real estate located at 3 Bow Street in Cambridge, Massachusetts.

7.  On July 11, 2003, the Foundation received an offer to purchase the Property from a qualified buyer for $6,601,000.

8.  On September 27, 2003, while the qualified buyer's offer was pending, Simmons executed a form Offer To Purchase Real Estate for the Property, in which he offered to purchase the Property from the Foundation for $7,200,000.

9.  Based upon Simmons's offer and the statements made by Simmons described below, the Foundation declined the qualified buyer's offer and accepted Simmons's offer. The Foundation's president, Eugene Shklar, accepted Simmons's offer by signing the offer document on September 30, 2003 at 5:00 P.M. As executed by both parties, this offer document forms the Agreement referenced in paragraph 1 above.

10. Under the terms of the Agreement, Simmons agreed to make payment in the amount of $7,200,000 payable as follows: (a) a $10,000 deposit to Hammond Real Estate, as escrow agent, with the executed Agreement; (b) $180,000 in the form of a promissory note "supplied by the seller to be executed by the purchaser on acceptance of this offer & payable at

2

closing, or, in the event of purchaser's failure to fulfill its obligations hereunder"; (c) $170,000 upon execution of the Foundation's purchase and sale agreement by the parties; (d) $3,240,000 at the time of closing; and (e) $3,600,000 in the form of a mortgage to be given by Simmons to the Foundation.

11.    Simmons provided the $10,000 payment at the time of his execution of the Agreement to the Foundation's broker, Hammond Real Estate, to be held in escrow. Simmons failed to deliver the promissory note at the time of execution of the Agreement, and did not deliver such note until October 20, 2003.

12.    The Agreement called for the parties to execute a copy of the Foundation's purchase and sale agreement on or before 5:00 P.M. on October 13, 2003. A copy of the Foundation's form purchase and sale agreement was attached to the Agreement at the time Simmons executed the Agreement.

13.    The Agreement provided for the transaction to close on December 15, 2003, at noon, or at another time to be agreed upon by the parties.

14.    A rider to the Agreement provided, among other things, that "Buyer & Seller will develop a 'punch list' of items that the seller will repair or replace, to building standards, at seller's expense." William Gaynor, representing the Foundation, met with Simmons to prepare this punch list, and to date the Foundation has spent approximately $70,000 to repair or replace the items included on that list and to make additional improvements requested by Simmons.

15.    Throughout his discussions with the Foundation, both prior to making his offer as well as during subsequent communications regarding the Agreement, Simmons stated that he could personally provide the funds necessary to close the transaction set forth in the Agreement.

16.    Simmons also repeatedly stated that he had a "binding agreement" with Alan Cockburn-Smith, who was to provide necessary financing to complete the purchase of the Property.

17.    On October 20, 2003, Simmons executed the Note. Under the Note's terms, Simmons was to pay $180,000 to the Foundation upon the completion of his purchase of the Property. In the event Simmons did not take title to the Property, the Note called for three payments to the foundation of $60,000 each due and payable first, on the later of December 15, 2003 or the date of closing set forth in the purchase and sale agreement; second, six months thereafter; and third, six months after the third payment. The cover letter enclosing the Note provided for a later execution date (November 11, 2003) for the purchase and sale than was contemplated by the Agreement. This later date was acceptable to the Foundation.

18.    It was not until on or about February 23, 2004 that Simmons, through his counsel, contacted the Foundation's counsel with proposed revisions to the Foundation's form purchase and sale agreement that was attached to the Agreement. Simmons proposed a number of changes to that purchase and sale agreement, including changing the name of the purchaser to The Banking Consortium Limited, the name of the entity that Simmons represented would provide financing for the purchase of the Property. Simmons also informed the Foundation that he would provide payment in full at the time of closing, obviating the need for a seller's mortgage, and that the closing date would be on March 31, 2004.

19.    Because the Agreement called for Simmons to execute "seller's Standard Form Purchase and Sale Agreement," the Foundation was not required to consider the changes requested by Simmons. Nonetheless, on or about March 4, 2004, the Foundation responded with a draft that incorporated many of the changes requested by Simmons in his counsel's February

23, 2004 draft. Notably, the Foundation agreed to the March 31, 2004 closing date proposed by Simmons.

20.    Subsequently, further drafts were exchanged, and although the Foundation was not required to consider such drafts, it did so based upon Simmons' representations that he would either provide or obtain financing necessary to complete the transaction.

21.    Simmons did not execute a purchase and sale prior to his proposed closing date of March 31, 2004, and in fact, notwithstanding that the Foundation sent a number of subsequent drafts to him, Simmons has still not executed a purchase and sale agreement.

22.    On May 24, 2004, the Foundation's counsel, by letter, notified Simmons's counsel that the Foundation intended to tender performance in accordance with the terms of the Agreement on June 8, 2004, at 11:00 A.M. at Simmons's counsel's office.

23.    The parties subsequently agreed to meet on June 8, 2004, to discuss the transaction, and the Foundation agreed to delay its tender of performance until June 9, 2004.

24.    Notwithstanding Simmons's continued representation that he would complete the transaction contemplated under the terms of the Agreement, Simmons failed to fulfill his obligations under the Agreement when the Foundation tendered performance on June 9, 2004.

25.    On June 17, 2004, the Foundation requested that Hammond Real Estate, as escrow agent, release the $10,000 deposit to the Foundation as a result of Simmons' failure to take title to the Property. Hammond Real Estate indicated that it would only do so subject to Simmons signing a release form. On Friday, June 19, 2004, Hammond Real Estate sent a release to Simmons' attorney, William Rizzo, requesting that the $10,000 deposit be released to the Foundation. To date, Hammond Real Estate has not received any response from Mr. Rizzo, or Simmons.

26.     On June 23, 2004, William Gaynor, on behalf of the Foundation, sent a demand letter, via certified mail, to Simmons requesting that Simmons make immediate payment of the $120,000 due representing the first two installments due under the Note, and, on or before December 15, 2004, $60,000, representing the third installment due under the Note. To date, Simmons has not responded to this demand.

## COUNT ONE: BREACH OF CONTRACT

27.     The Foundation incorporates by reference and restates the allegations contained in paragraphs 1-26 above.

28.     The Agreement and Note constitute valid and enforceable contracts between the Foundation and Simmons.

29.     The Foundation has performed and/or stood ready to perform all of its obligations under the Agreement and Note, as evidenced by its tender of performance on June 9, 2004.

30.     Simmons has breached his obligations under the Agreement by both failing to execute a purchase and sale agreement and failing to provide funding in the amount of $170,000.

31.     Simmons has breached his obligations under the Note by failing to make payments due and owing under that Note, which total $120,000, with another $60,000 payment due on or before December 15, 2004.

32.     Simmons has breached his obligation to release the $10,000 deposit from escrow to the Foundation as a result of Simmons' failure to take title to the Property.

33.     As a result of Simmons's breach, the Foundation has been damaged in an amount including, but not limited to, $300,000, plus interest.

## COUNT TWO: FRAUD

34.    The Foundation incorporates by reference and restates the allegations contained in paragraphs 1-33 above.

35.    Beginning with [hopefully prior] his execution of the Agreement on September 27, 2003 and throughout the parties' discussions thereafter, Simmons knowingly and repeatedly misrepresented to the Foundation that he was able to close the transaction on the Property, and that he had a "binding agreement" with an investor, Alan Cockburn-Smith, to provide financing for the transaction.

36.    Simmons made these statements with the intent to induce the Foundation to enter into an agreement to sell the Property to him and decline other offers for the Property.

37.    Based upon Simmons's statements, the Foundation declined another offer for the Property, performed repairs and made improvements to the Property pursuant to the "punch list" provided to the Foundation by Simmons in the amount of approximately $70,000, did not lease any of the Property to other parties, and incurred substantial attorneys' fees and other expenses necessary to complete the transaction contemplated in the Agreement.

38.    As a result of Simmons's misrepresentations, the Foundation has been damaged.

## COUNT THREE: VIOLATION OF M.G.L. c. 93A, §§ 2 & 11

39.    The Foundation incorporates by reference and restates the allegations contained in paragraphs 1-38 above.

40.    The Foundation and Simmons were at all relevant times engaged in trade or commerce within the Commonwealth of Massachusetts.

41.    Simmons's acts and conduct, as described above, constitute unfair and deceptive trade practices in the conduct of trade or commerce, in violation of M.G.L. c. 93A, §§ 2 & 11.

42.    Simmons's acts and conduct, as described above, occurred primarily and substantially within the Commonwealth of Massachusetts and were conducted knowingly and willfully.

43.    Simmons's unfair and deceptive trade practices caused the Foundation to suffer substantial direct, incidental, and consequential damages.

WHEREFORE, the Foundation prays that this Court:

a)    Enter Judgment in the Foundation's favor on its claim for breach of contract and award damages caused by Simmons's breach of contract;

b)    Enter Judgment in the Foundation's favor on its claim for fraud and award to the Foundation its damages and costs, including reasonable expenses and attorneys' fees;

c)    Enter Judgment in the Foundation's favor on its claim for violation of M.G.L. c. 93A, §§ 2 and 11, and award the Foundation its actual damages suffered, plus up to three but not less than two times such actual damages, as a result of Simmons's knowing and willful violation of M.G.L. c. 93A, § 11, together with reasonable attorneys' fees and expenses; and

d)    Issue such other and further relief as this Court deems just.

## JURY DEMAND

**Plaintiff Eugene and Daymel Shklar Foundation demands trial by jury on all counts so triable.**

EUGENE AND DAYMEL SHKLAR
FOUNDATION,

By its attorneys,

_____
Paul D. Wilson, BBO # 529950
Paul D. Abbott, BBO #652233
Mintz, Levin, Cohn, Ferris,
   Glovsky and Popeo, P.C.
One Financial Center
Boston, MA  02111
(617) 542-6000

Date:  July 8, 2004

LIT 1466028v1

JS 44
(Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**EUGENE AND DAYMEL SHKLAR FOUNDATION**

## DEFENDANTS

**IAN SIMMONS**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **Santa Cruz, CA**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) **(617)542-6000**
Paul D. Wilson, Esq. and Paul D. Abbott, Esq.
Mintz,Levin,Cohn,Ferris,Glovsky and Popeo, P.C.
One Financial Center, Boston, MA 02111

ATTORNEYS (IF KNOWN)

**04 11529 JLT**

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☒ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury — Med. Malpractice<br>☐ 365 Personal Injury — Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY** | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates etc<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Acts |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**HABEAS CORPUS:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 861 HIA 1395ff<br>☐ 862 Black Lung 923<br>☐ 863 DIWC/DIWW 405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI 405(g)<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS — Third Party 26 USC 7609 | ☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

This is an action for breach of contract, fraud, and violation of M.G.L. c. 93A, §§ 2 and 11. This court has jursdiction over this suit pursuant to 28 USC §1332.

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23    DEMAND $ _____    CHECK YES only if demanded in complaint: JURY DEMAND: ☒ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY (See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE 5/8/04    SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY)_____

    <u>Eugene and Daymel Shklar Foundation v. Ian Simmons</u>_____

2.  CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE
    CIVIL COVER SHEET.   (SEE LOCAL RULE 40.1(A)(1)).

    ___    I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    ___    II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,          *Also complete AO 120 or AO 121
                 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

    _X_    III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                 380, 385, 450, 891.

    ___    IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
                 690, 810, 861-865, 870, 871, 875, 900.

    ___    V.    150, 152, 153.

**04  11529 JLT**

3.  TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).

    _____

4.  HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
    COURT?                                                      YES ☐      NO ☒

5.  DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
    PUBLIC INTEREST?   (SEE 28 USC 2403)                        YES ☐      NO ☒
    IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                                YES ☐      NO ☒

6.  IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO
    TITLE 28 USC 2284?                                          YES ☐      NO ☒

7.  DO <u>ALL</u> PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS
    (<u>WORCESTER COUNTY</u>) - (SEE LOCAL RULE 40.1(C)).         YES ☐      NO ☒
    OR IN THE WESTERN SECTION (<u>BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES</u>)? -
    (SEE LOCAL RULE 40.1(D)).                                   YES ☐      NO ☒

8.  DO <u>ALL</u> OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF
    THE DISTRICT?                                               YES ☐      NO ☒
    (a)     IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE?_____

9.  IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE?  <u>Eastern</u>_____

10. IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL
    AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE
    CENTRAL SECTION:  YES ☐ NO ☐              OR WESTERN SECTION;  YES ☐      NO ☐

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME  Paul D. Wilson, Esq. and Paul D. Abbott, Esq._____
                 Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
ADDRESS_____ One Financial Center, Boston, MA 02111_____

TELEPHONE NO.____ (617) 542-6000_____

(Categfrm.rev - 3/97)